# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
### CIVIL ACTION NO. 3:17CV-00130-DJH

**TABATHA LYNN SHADBURNE**                                        **PLAINTIFF**

**VS.**

**BULLITT COUNTY, KENTUCKY,**
**and MARTHA KNOX,** *in her capacity*
*as the Bullitt County Jailer*                                      **DEFENDANTS**

<u>MEMORANDUN OPINION</u>
<u>AND ORDER</u>

Before the Court is the motion of Plaintiff Tabatha Lynn Shadburne ("Shadburne"),
individually and on behalf of all others similarly situated, to compel discovery responses from
Defendants Bullitt County, Kentucky, and Martha Knox, Bullitt County Jailer (collectively
referred to as "Defendants"). (DN 25). Shadburne alternatively seeks discovery sanctions against
Defendants in the same motion. (*Id.*). Defendants have filed a response in opposition. (DN 26).
Shadburne has filed a reply. (DN 27). These matters are ripe for review.

<u>Background</u>

Tabatha Lynn Shadburne was arrested on December 8, 2016, on a bench warrant issued by
Bullitt County Family Court for failure to appear in a domestic violence case. (DN 1, at ¶ 12).
Upon arrest, Ms. Shadburne was taken to the Bullitt County Detention Center and was
strip-searched at booking. (*Id.*). As a result of these events, Ms. Shadburne brought the instant
action against Defendants Bullitt County, Kentucky, and Martha Knox, Bullitt County Jailer,
alleging that the strip search violated her civil rights under 42 U.S.C. § 1983, including her rights

1

under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments. (*Id.* at ¶¶ 15-17). Shadburne also claims that Defendants' actions were negligent, grossly negligent, and constituted intentional infliction of mental and emotional distress. (*Id.* at ¶¶ 18-21). Shadburne brings this action in her individual capacity and also as a class action under Fed. R. Civ. P. 23 on behalf of "all persons arrested for minor offenses, or no offenses at all, who were required by the Defendants . . . to remove their clothing for a visual inspection upon admission to the Jail despite the absence of any reasonable suspicion that they were carrying weapons or contraband." (*Id.* at ¶¶ 1, 4-10).

On June 14, 2017, Shadburne served discovery upon the Defendants, and, one month later, Defendants responded to such discovery requests. (DN 17). Shadburne felt Defendants' answers were "non-responsive" and, as a result, sent Defendants a letter attempting to resolve the issue. (DN 25-3). Defendants responded to Shadburne's letter, explaining why they would not withdraw their objections to Shadburne's discovery requests. (DN 25-4). Shadburne's continued dissatisfaction with Defendants' answers led her to file the instant motion to compel. (DN 25).

<u>Analysis</u>

Shadburne's motion specifically objects to Defendants' responses to Request for Production of Documents 1, Interrogatory Nos. 2, 3, 4, 5, 7, 8, and 9, and Requests for Admission Nos. 2, 3, 4, 9, and 15. Defendants, in response, submit that their discovery answers are complete and non-evasive. (DN 26).

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

Relevance is to be construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted). In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosure or discovery when "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(iii), (iv). Under this Rule, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The party seeking discovery bears the burden of proving that a discovery response is inadequate. *Equal Rights Center v. Post Props, Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007).

A. Requests for Production of Documents

Request for Production of Documents No. 1

Shadburne's Request for Production of Documents No. 1 stated: "[p]lease produce a complete version of the rules, regulations, and policies of the Bullitt County Detention Center (which, according to the open records request previously provided, would seem to be 129 pages)." (DN 25-2). Defendants originally objected to the request as overbroad and burdensome in that it

seeks documents unrelated to Shadburne's allegations that her rights were violated when she was strip-searched. (*Id.*). Defendants also explained that they previously provided Shadburne with the Jail's policy on strip searches from the Policy and Procedure Manual because it is the subject matter of her Complaint. (*Id.*).

Shadburne now asserts that she is entitled to discovery of the entire Jail Policy and Procedure Manual ("the Jail Manual") since her claims extend beyond the strip search, in that she also alleges she was improperly detained despite having met the conditions of bond release. (DN 25-1, at pp. 2-4). In an attempt to resolve this dispute, Defendants offered to provide a full copy of the Jail Manual under an agreed protective order since "matters contained [within] affect the safety and security of the jail, its staff, and inmates." (DN 25-3). But because Shadburne believes the Jail Manual is a public record, and Defendants have not shown how its publication would affect the safety and security of the Jail, its staff, and inmates, she rejected the Defendants' compromise.

The inquiry here is twofold. First, should Defendants be required to produce the entire Jail Manual? Second, if so, should the Jail Manual be provided under a protective order as requested by the Defendants? As for the first question, the Court agrees with Shadburne that additional portions of the Jail Manual could be responsive to the factual allegations in her Complaint. Specifically, any section discussing bonding procedures could be relevant for Shadburne's allegations that the Jail was aware she had $350 on her person to immediately make bond with at the time of her arrest and, therefore, knew she would not be housed at the Jail but still performed a strip search. (DN 1, at ¶ 12). Because relevance is to be construed broadly and other portions of the Jail manual could bear on Shadburne's claims, the Court finds Defendants should be required to produce the Jail Manual in its entirety.

Moving on to the second question, Federal Rule of Civil Procedure 26 provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A motion for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.* The parties here clearly attempted to resolve the dispute by exchanging written correspondence before seeking the Court's assistance.[1] (*See* DN 25-3; DN 25-4). The question that remains is whether Defendants have established good cause for protection of the Jail Manual.

Defendants assert that public release of their policies and procedures could affect the safety and security of the Jail, especially if it were shared with inmates. (DN 16, at p. 2). This Manual, Defendants explain, includes "sections related to weapons and their storage, transport procedures, and location of keys" and "[c]ommon sense dictates that this information should not be made available to the public" because of the risk that such information would be shared with the individuals incarcerated at the Jail. (*Id.* at n.1).

Defendants' reasoning is compelling. Federal courts have repeatedly found good cause to limit discovery or disclosure of information implicating the safety and security of prisons and jails. *See Fourhorn v. City & Cnty. of Denver*, 261 F.R.D. 564, 569, (D. Col. 2009) ("Ample case law addressing issues relating to jail or prison security and safety concerns reflects a broad policy against Court interference in matters which affect those concerns.") (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415, 109 S. Ct. 1874, 104 L.Ed.2d 549 (1989)); *see also Robinson v. Adams*, No.

---

1 In her reply brief, Shadburne notes that "The Defendant acknowledges that the points raised in [her motion to compel] are 'identical' to those raised in a letter Plaintiff's counsel directed to Defendant's counsel. This shows the Plaintiff has attempted, informally, as required by the local rule, to obtain the sought discovery first, before seeking aid from the Court." (DN 27, at p. 1). The Court finds that the parties' written communications prior to the filing of Shadburne's motion to compel are sufficient to meet the "good faith" requirement of conferring to resolve the dispute.

1:08-cv-01380-AWI-BAM PC, 2012 WL 912746, at *2-3 (E.D. Cal. Mar. 16, 2012) (issuing protective order for documents containing information which implicated the safety and security of the prison).[2]

Accordingly, despite the presumption in favor of public access, the Court finds here that good cause has been shown to permit the designation of the Jail Policy and Procedures Manual as confidential. The Jail Manual shall be produced and maintained pursuant to the terms of a protective order. Defendants are directed to file a proposed protective order with the Court, indicating that the documents shall be marked as "Confidential" and shall not be disclosed to unauthorized individuals or used for any purpose other than the preparation of the case.[3]

B. Interrogatories

Interrogatory No. 2

Interrogatory No. 2 seeks "all reasons and justifications, if any, for why the Bullitt County Detention Center strip searched the Plaintiff." (DN 25-2, at p. 2). Defendants objected to this Interrogatory as duplicative and burdensome because this information was previously provided to Shadburne. Without waiving that objection, Defendants went on to state:

> Plaintiff was brought to the Bullitt County Detention Center in a van with six other detainees/arrestees who were either returning from court to the jail or had been committed to custody by the judge following a court appearance. Plaintiff was then

---

2  In arguing for protection of the Jail manual, Defendants cite to KRS § 197.025(6), which states: "[t]he policies and procedures or administrative regulations of the department which address the security and control of inmates and penitentiaries shall not be accessible to the public or inmates." (DN 26, at p. 2). Shadburne counters that this statute is inapplicable here in that it only applies to penitentiaries, and the Bullitt County Detention Center is not a penitentiary. (DN 27, at pp. 1-2). This distinction between penitentiaries and jails, however, does not change the fact that Federal courts have time and again found the safety and security of various locations confining inmates to qualify as good cause for limiting disclosure of information that could implicate these concerns.

3  The Court reminds Defendants that a protective order should not include any blanket sealing provisions because "[t]here is a stark difference between so-called 'protective orders' entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other . . ." *Shane Grp., Inc v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016).

detained for the purpose of processing and then strip searched prior to being placed in a holding cell where another inmate was being held. Once it was Plaintiff's turn to be booked, she was called out of the holding cell for purposes of the booking process by utilizing the Jail Tracker program. Plaintiff's strip search prior to her detention in the holding cell occurred pursuant to 501 KAR 3:120(3)(b)(3) which provides that 'A prisoner may be strip searched only on reasonable suspicion that is based upon the existence of objective information that may predict the likelihood of the presence of a weapon, drugs, or other item of contraband concealed on a particular prisoner. Reasonable suspicion may be based upon one (1) or more of the following examples: . . .(3) . . . after transport from or through an area to which the public may have access.'

(*Id.*). This response is deficient, according to Shadburne, because Defendants do not state how the interrogatory is duplicative and burdensome and because "baldly quoting a law, without stating how the law applied to the Plaintiff – when it clearly does not – is not an answer." (DN 25-1, at pp. 4-5). Defendants respond that this interrogatory is duplicative because Defendants previously provided this information to Shadburne through their Motion for Summary Judgment and supporting affidavits.

It is clear from Defendants' response to Interrogatory No. 2, and additionally from Defendants' Motion for Summary Judgement and the affidavits submitted therewith, that the Bullitt County Detention Center strip-searched Shadburne because she was being placed in a holding cell with another inmate while waiting to be booked. (DN 7-1, at p. 6; DN 7-2; DN 25-2, at p. 2). Defendants believe that KAR 3:120(3)(b)(3) justifies their strip-search of Shadburne on that basis. As such, Defendants response to Interrogatory No. 2 was complete and appropriate; supplementation is not necessary.

Interrogatory No. 3

Relatedly, Interrogatory No. 3 required Defendants to: "[p]lease state all 'reasonable suspicion', as defined by the Bullitt County Detention Center policies related to strip searches, that

the Bullitt County Detention Center had regarding the Plaintiff, to justify strip-searching her." (DN 25-2, at p. 3). The Defendants again objected to the Interrogatory as duplicative and burdensome because the information was previously provided to Shadburne and without waiving objection stated:

> Defendant had reasonable suspicion to strip search Plaintiff according to 501 KAR 3:120(3)(b)(3), previously explained in Response to Interrogatory Number 2. In addition, Defendant had reasonable suspicion to strip search Plaintiff pursuant to Bullitt County Detention Center's policy which states that reasonable suspicion to strip search can arise from 'but not necessarily exclusive to the following indices of risk: . . .
>
> 10. Upon a commitment to . . . custody from the community; . . .
>
> 14. Upon conviction or order [to] surrender to custody; . . .
>
> 16. While in a holding area.'
>
> In addition, as stated in the policy this list in not 'exclusive'.

(*Id.*). Shadburne now feels that Defendants' response is insufficient because it does not explain how the search was justified under the Bullitt County Jail Policies. (DN 25-1, at p. 6).

Shadburne's argument is not well-taken. By highlighting three "indices of risk" from the Bullitt County Detention Center's policy that can lead to "reasonable suspicion" to strip search an inmate, the Defendants directly responded to Shadburne's Interrogatory No. 3. The Court again finds Defendants' response to be sufficient.[4]

Interrogatory No. 5

Interrogatory No. 5 reads: "Please describe the Bullitt County Detention Center's policy, or usual practice in releasing arrested persons, when the only condition of their bond is payment of

---

4 Shadburne also objects to Defendants' response to Interrogatory No. 4, but the Court finds it is more appropriate to discuss Interrogatory No. 4 in the "Requests for Admission" section of this Opinion.

money, and the arrested person has sufficient bond money to make bond immediately, and specifically whether all such persons are stripped searched, prior to being released on bond." (DN 25-2, at p. 4). Defendants objected to this interrogatory as "not relevant to any issue in this case" yet went on to explain:

> Plaintiff was not strip searched 'prior to being released on bond.' Plaintiff was strip searched upon entry into the jail, pursuant to Jail policy and Kentucky's Administrative Regulation. The Bullitt County Detention Center does not strip search any inmates 'prior to being released on bond.' The process for releasing inmates on bond is the same regardless of whether the inmate has sufficient bond money on their person, as the jail is required to go through the same process for all inmates upon release. That process requires the deputy jailer to be in receipt of the appropriate bond amount, complete a series of forms in the Jail Tracker System, and release any property to the inmate that the jail may have secured.

(*Id.*). Shadburne again alleges that Defendants' response is "a bald reference to laws" with no explanation of how or why those laws apply to her. (DN 25-1). She adds that "[i]f those laws justify, or are the reason for why the Plaintiff was strip searched, that needs to be in the [Defendants'] answer." (*Id.*). Defendants assert that the justification for strip searching the Plaintiff was already discussed in answering Interrogatories No. 2 and 3 and their answer to Interrogatory No. 5 explains the bond process as requested by Shadburne.

Once again, the Court finds Defendants responded directly to Shadburne's inquiry in Interrogatory No. 5. Defendants described the bond process and clarified that the same bond process applies to all inmates, regardless of whether they have sufficient bond money on their person. Additionally, the Court has previously determined that Defendants appropriately referred to specific sections of the KAR and the Bullitt County Detention Center policies when answering Interrogatories No. 2 and 3 regarding the justification and reasonable suspicion for strip searching Shadburne. As a result, this response is sufficient.

Interrogatory No. 7

In Interrogatory No. 7, Shadburne sought Defendants "identify each and every of the 19 'indices of risk'" listed on pages 40-41 of the Bullitt County Detention Center Policies that applied to the Plaintiff at the time she was strip searched. (DN 25-2, at p. 5). Defendants objected to this Interrogatory as duplicative and burdensome in that it seeks the same facts identified in Defendants' answer to Interrogatory No. 3. (*Id.*). This objection, Shadburne feels, is non-responsive because the Defendants' answer to Interrogatory No. 3 was also non-responsive. (DN 25-1, at p. 7). Shadburne thinks the Defendants and their attorneys are "doing a song and dance, answering in circular, nonsensical, [sic] sentences, referencing non responsive answers, as if they answer the questions, when they do not." (*Id.*).

The Court, however, already found that Defendants' answer to Interrogatory No. 3 was complete because Defendants identified three of the nineteen "indices of risk" from the Bullitt County Detention Center Policies that applied to Shadburne. It is clear that Defendants are asserting that indices "10. Upon a commitment to . . . custody from the community," "14. Upon conviction or order [to] surrender to custody," and "16. While in a holding area" applied to Shadburne at the time she was strip searched. As such, Defendants' response to Interrogatory No. 3 is directly responsive to Interrogatory No. 7, and supplementation to this response is not needed.

Interrogatory No. 8

Interrogatory No. 8 reads: "From 1-1-08 to 1-1-17, please state any and all claims made against the Bullitt County Detention Center in which strip searches were part; for each state whether there was a money payment made to settle that claim; for each state the money payment respectively paid; for each state whether a court case was filed, for each state the style of the case."

(DN 25-1, at p. 5). In objecting to this Interrogatory, Defendants argued it was overly broad and unduly burdensome "in that it seeks information that is irrelevant to any claim in this case and will not lead to the discovery of admissible evidence." Notwithstanding the objection, Defendants explained they are only aware of one case concerning allegations of illegal strip searches, which was resolved in 2009, and that: "[t]he resolution of any such case prior to the issuance of *Florence v. Board of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (2012) and *T.S. Doe*, 742 F.3d 632, 636-37 (6th Cir. 2014) is irrelevant because the state of the law with respect to strip searches has significantly changed since that date." (*Id.* at pp. 5-6).

Shadburne finds fault with Defendants' response in two respects. First, Shadburne feels that Defendants contradict their "overly broad and unduly burdensome" objection by admitting that only one case exists during the requested time period. (DN 25-1, at p. 8). Second, Shadburne takes issue with Defendants' citation to the *Florence* case because *Florence* is not a defense to Defendants' actions and because the Defendants should not be permitted to answer an interrogatory by citing to a case they feel is dispositive of the issue. (*Id.* at pp. 8-9). Defendants responded that they will provide information related to claims against the Bullitt County Detention Center if the Court determines that cases prior to the entry of the *Florence* opinion are relevant in this matter. (DN 26, at p. 8). Defendants also note that "[a]ny lawsuits filed against the Bullitt County Detention Center are of public record." (*Id.*). In reply, Shadburne explains this information is necessary to establish that Defendants have a pattern and history of strip searching those interned there, for the purpose of identifying class members, and to establish that even after paying money to address the problem, the Jail continues to do it. (*Id.* at p. 14.).

To begin with, the issue of whether *Florence* is dispositive of Shadburne's claims is not before the Court in this discovery motion. That issue is before the Court on summary judgment and will be ruled on separately. (*See* DN 7). With that said, the Court agrees with Shadburne that it should not make findings as to *Florence's* applicability to this case when determining whether Defendants appropriately responded to Interrogatory No. 8.

As for Defendants' allegation that the information requested in Interrogatory No. 8 is not relevant to any claim in this case, the Court disagrees. District courts have generally noted that "[d]iscovery of other lawsuits [against a party] is not a subject that is amenable to a *per se* rule." *Brown v. Sun Healthcare Grp., Inc.*, No. 3:06-CV-240, 2007 WL 2963951, at *4 (E.D. Tenn. Oct. 9, 2007) (quoting *Thornton v. State Farm Mut. Auto. Ins. Co.*, No. 1:06cv-00018, 2006 WL 3499986, at *2 (N.D. Ohio Dec. 5, 2006)). Rather, a court must look to the relevance of other suits compared with "the particular claims at issue." *Brown*, 2007 WL 2963951, at *2 (quoting *Thornton*, 2006 WL 3499986, at *2). The same appears to be true for discovery of claims or complaints previously asserted against a party that did not necessarily mature into lawsuits. *See e.g.*, *Centeno v. City of Fresno*, No. 1:160-cv-00653, 2016 WL 7491634, at *7 (E.D. Cal. Dec. 29, 2016) (stating that prior complaints of misconduct made against a defendant "are discoverable when sufficiently similar to the claims brought in the instant suit"); *Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 692 (D. Kan. 2007) (noting that in the discrimination context, as a general rule, "[o]ther claims . . . against a defendant are discoverable only if limited to the same *form* of discrimination . . .").

Here, the Court finds Interrogatory No. 8 to be relevant because the requested information might reveal other instances of alleged illegal conduct by Defendants. Specifically, Defendants

12

must identify "other claims made against the Bullitt County Detention Center in which strip searches were apart [sic]," whether a court case was filed for such claims, and, if so, the style of each court case. Further, whether these "other claims" and cases involving strip searches against the Bullitt County Detention Center reached monetary settlement and the amounts of these settlements is also relevant and discoverable because the Kentucky Open Records Act provides that all public records, including "settlement[s] of civil lawsuits whereby a government entity pays public funds to compensate for an injury it inflicted[,]" are open for inspection by the public. KRS § 61.872; *Washington v. City of Georgetown*, No. 08-402-KSF, 2009 WL 530782, at *5 (E.D. Ky. Mar. 3, 2009) (quoting *Lexington-Fayette Urban Cnty. Gov. v. Lexington Herald-Leader Co.*, 941 S.W.2d 469, 471 (Ky. 1997)).

The Defendants, accordingly, shall provide a supplemental answer to Interrogatory No. 8, which identifies (1) all claims made against the Bullitt County Detention Center from January 1, 2008 to January 1, 2017 involving allegedly illegal strip searches; (2) whether a court case was filed on these claims; (3) the style of each case; and (4) the disposition of each claim, including the amount of any settlement or judgment.

Interrogatory No. 9

In Interrogatory No. 9, Shadburne asked the Defendants to "[p]lease state why the Bullitt County Detention Center does not, or, as to Plaintiff, did not, follow its own regulations relating to strip searches." (DN 25-2, at p. 6). The Defendants objected to the Interrogatory as vague and ambiguous because it implies that the Bullitt County Detention Center does not follow its policies relating to strip searches. (*Id.*). Without waiving their objection, Defendants continued: "[T]he Bullitt County Detention Center follows the Jail's policies relating to strip searches, as well as

Kentucky's Jail Regulations. Further, the Jail followed the strip search policy and Kentucky's Jail Regulations as it relates to Plaintiff. See Defendant's previous interrogatories." (*Id.*).

Now Shadburne argues that Defendants' answer is "nonresponsive" in that the question calls for the Jailor, in her own words, to describe "how, or not, she complied with the law in the stripping of the Plaintiff[,]" which Defendants did not answer. (DN 25-1, at pp. 9-10). Defendants disagree with Shadburne's new characterization of this Interrogatory. (DN 26).

After reviewing Interrogatory No. 9, the Court agrees with Defendants that the Interrogatory does not ask Defendant "to describe, how, or not, she complied with the law of stripping the Plaintiff." Interrogatory No. 9, instead, essentially seeks an admission that the Bullitt County Detention Center did not follow its own regulations in strip searching the Plaintiff. Regardless, the Defendants answered the question by stating that they follow the Jail's policies as to strip searches and that they did so in relation to the search of Shadburne. The Court, therefore, finds Defendants fully answered Interrogatory No. 9.

### C. Requests for Admission

### Request for Admission No. 2

In Request No. 2, Shadburne asks Defendants to admit that "the Bullitt County Detention Center violated its own regulations, relating to strip searches, when it strip searched the Plaintiff." (DN 25-2, at p. 10). Defendants responded: "deny. See Responses to Interrogatories." (*Id.*). Shadburne believes this denial is insufficient because Defendants did not provide a "detailed explanation" as required by Federal Rule of Civil Procedure 36. (DN 25-1).

Shadburne misinterprets Rule 36(a)(4). This Rule states that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully

admit or deny it. A denial must fairly respond to the substance of the matter[.]" Fed. R. Civ. P. 36(a)(4). But the word "specific," as used here, does not mean that details need to be afforded or that an explanation is necessary. *See In re Wahlie*, Nos. 11-3157, 10-31680, 2011 WL 6757006, at *2 (N.D. Ohio Dec. 23, 2011) ("the use of the word 'DENY,' in a response to a matter for which an admission is requested, is not deficient for purposes of Rule 36[.]"); *see also Jones v. Univ. of Memphis*, No. 2:15-cv-02148-JPM-cgc, 2016 WL 6123510, at *1 (W.D. Tenn. Sept. 23, 2016) (finding response stating that "Defendant denies the allegations as stated in Request No. 16" to constitute a specific denial."); *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447 (C.D. Cal. May 18, 1988) ("[w]hen responding to requests for admissions, explanation generally is unnecessary."). Defendants' use of the word "deny" constitutes a specific denial.

Nevertheless, Defendants' response also states "see Responses to Interrogatories." Request for Admission No. 2 is almost identical to Shadburne's Interrogatory No. 9, which the Court already found was answered completely by Defendants. To be sure, Defendants' answer to Interrogatory No. 9 stated the Bullitt County Detention Center "follows the Jail's policies relating to strip searches, as well as Kentucky's Jail Regulations" and "the Jail followed the strip search policy and Kentucky's Jail Regulations as it relates to Plaintiff." This response plainly explains the Defendants' denial of Request for Admission No. 2.

### Request for Admission No. 3

Request for Admission No. 3 seeks Defendants admit that "the Bullitt County Detention Center regulations relating to strip searches, require a Deputy to have 'reasonable suspicion that the inmate to be searched has contraband that poses a threat to the public, safety, institutional safety, or the behalf of persons in custody,' and that 'Strip searches must [be *sic*] approved by the

15

on duty shift leader.' [E, Policy, Practice, 2, page 40 of 129]." (DN 25-2, at p. 2). Defendants responded with: "Objection, the policy speaks for itself." (*Id.*).

Shadburne takes issue with this response because the question asked is appropriate and simple – "[i]t calls for her to admit that certain policies say, literally, what they say." (DN 25-1, at p. 10). Defendants counter that Shadburne's explanation of the request mirrors the Defendants' response that "the policy speaks for itself." (DN 26). In reply, Shadburne argues that the Request was meant to establish what the document states and that the Defendants concur and agree with it. (DN 27, at pp. 15-16). Shadburne additionally asserts that Defendants' response fails under Rule 36. (*Id.*).

Courts within the Sixth Circuit have recognized that "[s]tating a document speaks for itself avoids the purpose of requests for admission, *i.e.*, narrowing the issues for trial." *Aprile Horse Transp., Inc. v. Prestige Delivery Sys., Inc.*, No. 5:13-CV-15-GNS-LLK, 2015 WL 4068457, at *5 (W.D. Ky. July 2, 2015) (citing *Miller v. Holzmann*, 240 F.R.D. 1, 4 (D.D.C. 2006)). A party's objection that a document "speaks for itself," therefore, does not sufficiently meet the requirements of Rule 36. *See Jones v. Univ. of Memphis*, No. 2:15-cv-02148-JPM-cgc, 2016 WL 6123510, at *2 (W.D. Tenn. Sept. 23, 2016) (citing *Aprile Horse*, 2015 WL 4068457, at *5). Because Defendants here neither admitted nor denied the request and instead relied on the unacceptable "speaks for itself" objection, the Court finds the appropriate remedy is to have Defendants amend their answer to Request for Admission No. 3. *See Jones,* 2016 WL 6123510, at *2.

### Requests for Admission No. 4 and No. 15

Request No. 4 seeks Defendants admit "the Bullitt County Detention Center lacked

'reasonable suspicion', as defined by its regulations, specifically relating to strip searches, to strip search the Plaintiff." (DN 25-2, at p. 11). Similarly, Request No. 15 seeks admission that "prior to strip searching the Plaintiff, the Bullitt County Detention Center, or its agents, did not conclude, find, or have reason to believe, that any of the 19 'indices of risk', under its 'practice' section, in its regulations related to strip searches, paragraph 3 thereof, page 40-41 of the polices [sp], existed to justify strip searching the Plaintiff." (*Id.* at p. 13). Defendant answered both Requests by stating "[d]eny. See Responses to Interrogatories."

Like the above analysis of Request for Admission No. 2, the Court finds Defendants' responses here to be sufficient. Defendants' use of the word "deny" constitutes a specific denial. *See Perez v. KDE Equine, LLC*, No. 3:15-CV-00562-CRS, 2017 WL 56616, at *9 (W.D. Ky Jan. 4, 2017) (by responding with "denied," Defendants specifically and unconditionally denied the disputed Request for Admission); *Jones*, 2016 WL 6123510, at *1. And although Defendants could have referred to specific interrogatory numbers, the Court finds reference to their "responses to interrogatories" is appropriate since the Court already found such interrogatory responses to be complete. Defendants' response to Interrogatory No. 3 directly addresses both of these Requests for Admission by stating "Defendants had reasonable suspicion to strip search Plaintiff pursuant to Bullitt County Detention Center's policy . . ." and listing three "indices of risk" from the "practice" section. For these reasons, no supplementation of Defendants' responses to Request for Admission Nos. 4 and 15 is necessary.

Request for Admission No. 9

Request No. 9 reads: "[p]lease admit that, prior to strip searching the Plaintiff, the Bullitt County Detention Center, or its agents, knew the Plaintiff had, on her person, more than sufficient

money to make bond." (DN 25-2, at p. 12). Defendants responded with "[d]eny." (*Id.*). Once again, the Court finds Defendants have specifically and unconditionally denied this Request for Admission and, accordingly, finds such response is sufficient to satisfy Rule 36(a)(4).

Interrogatory No. 4

Because Interrogatory No. 4 deals with Shadburne's Requests for Admissions, the Court finds it is better evaluated in this section. Interrogatory No. 4 states: "For all Requests for Admission you have answered with other than an unqualified 'Admit,' please fully explain all facts that made admitting the request impossible." (DN 25-2, at p. 3. Defendants' response states "see Responses to Defendant's Requests for Admissions." (*Id.*). Shadburne cites to Federal Rule of Civil Procedure 36(a)(4) to argue that Defendants were required to provide a detailed and good faith explanation as to why the requests for admission were denied. (DN 25-1, at pp. 6-7). This answer is non-responsive, according to Shadburne, because the Defendants' responses to the Requests for Admission referenced by Defendants are also non-responsive. (*Id.*). Defendants state that all of their denials of Requests for Admission were explained by reference to the detailed answers to Interrogatories or by a simple statement following the denial. (DN 26).

A party propounding requests for admission may also propound an interrogatory asking for an explanation of the responding party's denial of such requests for admission. *Deutsch v. Arrow Fin. Servs., LLC*, No. 8:08-cv-1469-T-17MAP, 2009 WL 10670785, at *3 (M.D. Fl. May 1, 2009) (citing *Safeco*, 181 F.R.D. at 442). In fact, interrogatories of this type are frequently used "to uncover the details of a party's responses to requests for admission." *GATX Corp. v. Appalachian Fuels, LLC*, No. 09-41-DLB, 2010 WL 5067688, at *7 (E.D. Ky. Dec. 7, 2010). Often this type of

interrogatory is challenged for violating the numerosity limits of Rule 33(a), *id.* (citing *Safeco*, 181 F.R.D. at 442) or for being unduly burdensome and oppressive, *see Safeco*, 181 F.R.D. at 447.

Here, Defendants have neither challenged Interrogatory No. 4 on numerosity grounds nor as being unduly burdensome. In fact, Defendants do not object to Interrogatory No. 4 at all but instead assert that their answer stating "see responses to Plaintiff's Requests for Admissions" is sufficient. The Defendants' position is not persuasive. While the Court agrees that no further explanation of their unequivocal denials of Shadburne's Requests for Admissions is necessary, the same cannot be said of the Defendants' answer to Interrogatory No. 4. By merely referencing their answers to the Requests for Admissions, which the Court has found do not require a detailed explanation, Defendants fail to answer the Interrogatory.[5] Since an interrogatory of this nature is generally permissible and Defendants have not otherwise objected, the Court finds Defendants did not answer this interrogatory fully and will order a more complete answer. *See GATX Corp.*, 2010 WL 5067688, at *8.

### D. Sanctions

Shadburne, in the alternative, seeks sanctions be imposed on Defendants for their incomplete discovery responses. Specifically, Shadburne asks the Court to grant her "a judgment on the merits of the case, as to liability, and to allow the case to proceed to determine class definition, and set the matter for trial as to damages." (DN 25-1, at p. 11). Defendants, in response, believe they have fully complied with the civil rules in answering discovery and that Shadburne has not demonstrated any reason they should be sanctioned. (DN 26, at p. 11).

---

5 The Court also notes that Defendants' answer to Interrogatory No. 4 is quite circular in its reasoning because it references their responses to Shadburnes' Requests for Admissions, and such responses, in turn, reference their responses to Shadburne's Interrogatories.

Shadburne's request for sanctions is unavailing. The Sixth Circuit has described entry of a default as the most severe discovery sanction available. *See Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008). Such a sanction should only be considered when "1) the disobedient party acted in willful bad faith; 2) the opposing party suffered prejudice; 3) the court warned the disobedient party that the failure to cooperate could result in a default judgment; and 4) less dramatic sanctions have been attempted." *Ward v. Am. Pizza Co.*, 279 F.R.D. 451, 455 (S.D. Ohio, 2012) (citations omitted). None of the above criteria supporting an entry of default judgment are present here. While the Court finds four of Defendants' discovery responses must be supplemented, it is inappropriate to award sanctions for these deficient responses, let alone the most severe sanction available, because Defendants' deficient responses were harmless.

<u>Order</u>

**IT IS THEREFORE ORDERED** that Shadburne's Motion to Compel (DN 25) is **GRANTED IN PART** and **DENIED IN PART** to the extent set forth above. Defendants are required to **provide supplemental responses** to Shadburne's **Request for Production of Documents No. 1, Interrogatory Nos. 4 and 8, and Request for Admission No. 3** within thirty (30) days of entry of this Order.

**IT IS FURTHER ORDERED** that Shadburne's request for sanctions is **DENIED.**

Copies to:    Counsel of Record